# IN THE COURT OF APPEALS OF IOWA

No. 23-0365
Filed May 8, 2024

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**CHRISTY ANN GAINVORS,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Linn County, Casey D. Jones, Judge.

　　Defendant appeals her conviction for third-degree theft. **AFFIRMED.**

　　Martha J. Lucey, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

　　Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

　　Considered by Bower, C.J., Badding, J., and Carr, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**CARR, Senior Judge.**

Christy Gainvors appeals the judgment and sentence entered following a jury verdict finding her guilty of theft in the third degree, by deception, in violation of Iowa Code sections 714.1(3) and 714.2(3) (2020). She challenges the sufficiency of the evidence.

Gainvors was an employee of All Tune and Lube Total Car Care. Over her fifteen-month employment, Gainvors had her personal vehicle as well as the vehicles of her mother and son serviced at the business. Under the employer's policy, employees were allowed to get personal vehicles serviced, but as was expected of any other customer, they were to pay for the work once completed. The owner, Russ Hotchkiss explained that if a vehicle left the premises with repairs unpaid "we have no leverage" to secure payment. On a few occasions, Gainvors paid for work to her personal or family vehicles using a debit or credit card. Other times, however, Gainvors charged the repairs to an account she opened in her own name with the business. Such charge accounts were ordinarily used for "fleet" customers, such as a business with many vehicles that are routinely brought in for service work. Employees were only permitted to charge service work to an account if Hotchkiss authorized the charge. And even then, Hotchkiss required an agreement and promissory note to be signed.[1]

By the end of Gainvors's employment, she had an outstanding balance of $1400.30 on her account. Hotchkiss first learned of the existence of the account

---

[1] Mechanics were not required to give security for work charged because their tools were at the business and Hotchkiss could hold their tools as collateral if they did not pay as required. This exception for mechanics did not extend to service advisors like Gainvors.

at the end of 2021, as he was reviewing the business's accounts in preparation for January 2022 tax work with his accountant. He promptly sent Gainvors a message about the debt demanding payment by the end of the week or he would send her debt to collections. Gainvors replied with some profanity and insults.

We review sufficiency challenges for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). Under this standard, we view the record "in the light most favorable to the State" and "draw all legitimate inferences in support of the verdict." *Id.* A jury verdict is binding if it is supported by substantial evidence. *Id.* Evidence is substantial if it could persuade a rational jury that Gainvors is guilty beyond a reasonable doubt. *See id.*

The court's trial instructions to the jury included Instruction 13, the marshalling instruction, tracking the statutory language of section 702.9(3) and (5), obligating the State to prove that:

> 1.. . . [T]he defendant did create a charge account under her name while employed at All Tune & Lube and had services performed on vehicles without the authorization of All Tune & Lube and did not pay for the parts, labor, or services to the vehicles.
> 2. The defendant knowingly deceived All Tune & Lube in one or more of the following ways:
> a. Prevented All Tune & Lube from acquiring information pertinent to the disposition of the property involved in any commercial or noncommercial transaction or transfer.
> b. Promised payment, the delivery of goods, or other performance which the defendant did not intend to perform or knew the defendant would not be able to perform. Failure to perform, standing alone, is not evidence the defendant did not intend to perform.
> 3. The defendant obtained one or more of the following from All Tune & Lube by deception:
> a. labor or services, or
> b. transfer of possession or control of property, or
> c. beneficial use of property, or
> d. transfer of ownership of property, or
> e. the beneficial use of property.

Gainvors argues that the evidence is insufficient to support her conviction for theft in the third degree under the theft-by-deception alternative because the State failed to prove that she knowingly deceived the employer as the second element requires. *See* Iowa Code § 714.1(3). Gainvors asserts that she received verbal permission from both Hotchkiss and the service manager, Kevin Bullard, to charge to her account. But Hotchkiss testified at trial that he never gave Gainvors permission to charge to her account and was never even asked to do so. Bullard testified that Gainvors did ask him about opening a charge account but instead of giving her permission, he told her to ask Hotchkiss.

The jury did not have to believe Gainvors's version of the facts; it could and did find that Gainvors deceived the employer when she created the charge account without authorization and charged services to the unauthorized account on eight separate occasions. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (finding the jury is free to believe or disbelieve any testimony as it chooses). By surreptitiously creating and on eight occasions using the charge account, Gainvors was able to secure automotive goods and labor without paying at the time of service as required. Each time she took a vehicle to the business for service, her promise was that the cost of service would be paid when rendered. However, her clear but undisclosed intent was not to do so, but instead, to post the charge to her unauthorized account. Her possible general intent to pay her account at some indeterminate point in the future does not negate the effect of her deception, which was to unilaterally convert a cash transaction to one of credit. Concerning her

intent, we note that even upon quitting her employment, she did not disclose the existence of the account, pay it, or make any arrangement to do so.

Viewing the evidence in the light most favorable to the verdict, a jury could have reasonably found that Gainvors knowingly deceived her employer. Accordingly, we affirm.

**AFFIRMED.**